# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| BILLY DICKSON, | : | PRISONER CIVIL RIGHTS |
| INMATE NO. 533247, | : | 42 U.S.C. § 1983 |
| Plaintiff, | : | |
| | : | CIVIL ACTION NO. |
| v. | : | 1:06-CV-1310-JTC |
| | : | |
| GEORGIA STATE BOARD OF | : | |
| PARDONS AND PAROLES, ET | : | |
| AL., | : | |
| Defendants. | | |

## ORDER AND OPINION

Plaintiff has submitted the instant pro se civil rights action. The matter is presently before this Court for a 28 U.S.C. § 1915A frivolity determination.

I.   The Standard of Review

Pursuant to 28 U.S.C. § 1915A, a federal court is required to conduct an initial screening of a prisoner complaint to determine whether the action is either: (1) frivolous, malicious or fails to state a claim on which relief may be granted; or (2) seeks monetary relief against a defendant who is immune from such relief. A claim is frivolous when it appears from the face of the complaint that the factual allegations are "clearly baseless" or that the legal theories are "indisputably meritless." Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). A complaint

may be dismissed for failure to state a claim when it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.  Brower v. County of Inyo, 489 U.S. 593, 597 (1989).

In order to state a claim for relief under 42 U.S.C. § 1983, a plaintiff must satisfy two elements.  First, a plaintiff must allege that an act or omission deprived him of a right, privilege, or immunity secured by the Constitution of the United States.  Hale v. Tallapoosa County, 50 F.3d 1579, 1581 (11th Cir. 1995).  Second, a plaintiff must allege that the act or omission was committed by a person acting under color of state law.  Id.  If a litigant cannot satisfy these requirements, or fails to provide factual allegations in support of the claim, then the complaint is subject to dismissal, pursuant to 28 U.S.C. § 1915A.  See Bell Atlantic Corp. v. Twombly, __ U.S. __, 127 S. Ct. 1955, 1974 (2007) (more than merely "conceivable," a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face"); Papasan v. Allain, 478 U.S. 265, 286 (1986) (the court accepts as true the plaintiff's factual contentions, not his or her legal conclusions that are couched as factual allegations); Bolin v. Story, 225 F.3d 1234, 1243 (11th Cir. 2000) (district court correctly dismissed § 1983 claims for failure to assert any specific

AO 72A
(Rev.8/82)

misconduct against IRS agent); Beck v. Interstate Brands Corp., 953 F.2d 1275, 1276 (11th Cir. 1992) (the court cannot read into a complaint non-alleged facts).

II.   Discussion

    A.   Plaintiff's Allegations

        1.   Parole

Plaintiff states that during the previous fifteen (15) years Georgia's inmate population increased by 150%. (Doc. 1, attached statement of facts at 1). Plaintiff alleges that the inmate population increase is due to the Georgia State Board of Pardons and Paroles' ("Board") "refusal" to release prisoners on parole. (Id.).

Plaintiff also complains that the Board refuses to release its files, and consequently, inmates do not know if their files are accurate. (Id. at 2). Plaintiff also complains that the Board does not personally interview inmates. (Id.). Plaintiff further alleges that the Board has eliminated prisoners' incentive to earn good-time credits. (Id. at 2-3). In support, Plaintiff claims that the Board will "allow inmates to languish and suddenly recommend a program to be completed and then adjust a TPM [Tentative Parole Month] by about 90-days." (Id. at 3).

AO 72A
(Rev.8/82)

Plaintiff does not request any relief which addresses his unspecified situation. Instead, Plaintiff asks this Court to investigate the actions of the Board to determine if it has violated the Due Process Clause. (Id.).

### 2. Prison Conditions

Plaintiff, who is currently confined at the Johnson State prison, complains that prison officials verbally abuse inmates by screaming at them during regularly scheduled activities, and when the inmates are eating. (Id. at 4). Plaintiff also alleges that prisoners are only given five minutes to eat and are subject to "excessively numerous" prisoner counts and inspections. (Id.). Plaintiff complains that, if a prisoner does not fully cooperate during these counts and inspections, he may be disciplined. (Id.).

Plaintiff alleges that prison counselors "do as little as possible" to assist inmates with filing informal grievances and other, unspecified requests. (Id. at 4-5). Plaintiff states that at least one counselor retaliated after a grievance was filed against him by "not showing up" for weeks in certain sections of the Johnson State Prison, and when he did come to the unit, called the inmates "bitches." (Id. at 4). Plaintiff does not state that any counselor retaliated against him. Plaintiff does ask

AO 72A
(Rev.8/82)

this Court to determine the qualifications and competency of counselors at the Johnson State Prison. (Id. at 5).

Plaintiff states that prisoners are not paid "State pay" for their work assignments. (Id.). Further, upon release, inmates are provided only $25.00 and a bus ticket. (Id.). This lack of support, according to Plaintiff, may be responsible for many inmates violating their parole during their "first 48-hours out." (Id.). Plaintiff alleges this information demonstrates that the state lacks "an effective, meaningful, and adequate inmate fund." (Id. at 7).[1]

Plaintiff also alleges that the prison's law library is so inadequate "as to warrant a denial of access to the courts." (Id.). In support, Plaintiff states that only one-fifth of Georgia's statutes are available, inmates may use the library for no more than two hours per week, there is inadequate legal staff to assist inmates, and there are only three computer stations providing access to legal databases to serve approximately 1000 inmates. (Id.).

Relatedly, Plaintiff also complains that prison officials only allow inmates to receive legal documents from attorneys and courts. (Id.). This restriction,

---

[1] In numbering the pages of his statement of facts, Plaintiff went from page five to page seven.

5

according to Plaintiff, prevents inmates from receiving photocopies of legal documents from their families. (Id. at 8). Plaintiff also asserts that overcrowding at the prison is the reason officials will not allow prisoners to receive legal documents from their family. (Id.).

Plaintiff states that each unit in the prison holds 100 men, and two inmates are assigned to each cell. (Id.). Plaintiff complains that only six showers are available for each unit, but he does not allege that he is unable to take a shower. (Id.). Each unit also has two televisions – one dedicated to sports programming and the other to movies. (Id.). Plaintiff states that these two televisions were recently moved into a common day-room in order to create more bed space. (Id.). Plaintiff complains that the result of moving the televisions into the same area has increased the noise level and frustration among the inmates. (Id.).

Plaintiff alleges that the sliding vents located on cell doors allow "excessive" amounts of cold air during winter and hot air during summer to enter the cell . (Id.). Plaintiff also alleges that water sometimes seeps into the area during the "Rainy Season." (Id.). The result, according to Plaintiff, is that "clothing and bed linen take on a musty smell." (Id.). Plaintiff does not contend

6

that he has suffered any injuries, such as health problems, due to the sliding vents and water seepage.

As noted above, Plaintiff complained that inmates are only given five minutes to eat their meals. Plaintiff also finds the quality of the food "deplorable," and he complains that servings are "minimal." (Id. at 9). Related to the quality of the food, Plaintiff states that the weekly menus are the same, and that only the garnishment is altered. (Id.). Plaintiff also alleges that the dining area in the prison is too small, but he does not explain, at least clearly, how this prevents an inmate from eating. (Id.). Plaintiff complains further that inmates will be disciplined if they talk during meals. (Id.). Plaintiff does not allege facts suggesting that his health has suffered as a result of the food served at the prison or the conditions under which he must eat it.

Plaintiff states that the prison has two recreation yards and each yard is equipped with a ballfield, volley ball court, and a basketball court. (Id.). Plaintiff complains that, except for bleachers, inmates are not provided with tables or chairs in the recreation yards. (Id.). Plaintiff alleges that the yards are so small that inmates often do not go outside when permitted. (Id.). Plaintiff blames overcrowding for this problem. (Id.).

7

Plaintiff seeks extensive equitable relief. (Doc. 1, attached request for relief at 1-9). In short, Plaintiff asks this Court to create a new correctional system for Georgia which is modeled after his vision of what constitutes a just penal and parole system.

### B. Analysis of Plaintiff's Claims

#### 1. Class Action

This action was originally submitted by four inmates, but this Court previously found that indigent prisoners are not permitted to bring an action on behalf of other inmates or themselves without each inmate being responsible for the $350.00 filing fee. (Docs. 1-2). Despite this Court's previous Order, Plaintiff has not amended his action and seeks to bring it as a class action on behalf of all similarly situated Georgia prisoners. (Doc. 1, attached request for relief at 1). A class is not properly represented where a pro se litigant seeks to represent the class. See Oxendine v. Williams, 509 F.2d 1405, 1407 (4th Cir. 1974) ("it is plain error to permit this imprisoned litigant who is unassisted by counsel to represent his fellow inmates in a class action"). Accordingly, Plaintiff is denied leave to file this action as a class action.

8

2.  Standing

Possibly due in part to his seeking to bring this action as a class action, Plaintiff has proffered few, if any, facts which, if proven, would show that he has been injured by the actions of any Defendant. In order to have "standing" to bring an action, a litigant first must clearly demonstrate that he has suffered an "injury in fact." Whitmore v. Arkansas, 495 U.S. 149, 154 (1990); see also Steel Co. v. Citizens for a Better Environment, 523 U.S. 94-96, 104 (1998) (standing must be established in order for a federal court to have subject-matter jurisdiction); Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992) (burden of demonstrating standing lies with the party seeking relief in federal court); Warth, 422 U.S. 490, 499 (1975) (litigant may invoke only his or her "own legal rights or interests, and cannot rest his [or her] claim to relief on the legal rights or interests of third parties"). In a situation such as Plaintiff's, where the party seeks injunctive relief, the United States Court of Appeals for the Eleventh Circuit has held: "Because injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party alleges, and ultimately proves, a real and immediate – as opposed to a merely conjectural or hypothetical – threat of future injury." Wooden v. Board of Regents of University System of Georgia, 247 F.3d 1262, 1284 (11th Cir. 2001)

(citing City of Los Angeles v. Lyons, 461 U.S. 95, 102 (1983)). Given the failure of Plaintiff to allege any actual injury, this action may be dismissed on this basis. However, for the sake of completeness, this Court will discuss several other reasons why this action should be dismissed.

### 3. Claims Related to Prison Conditions

**Respondeat Superior**

With regard to his claims concerning prison life, Plaintiff has named only James Donald, Commissioner of the Georgia Department of Corrections, as a Defendant in this action. "It is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003) (quotations omitted). A supervisor is liable only when he or she "personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." Id. With a few possible exceptions which will be covered, infra, in this Court's review of the need to exhaust administrative remedies, Plaintiff has not alleged facts indicating that Defendant Donald acted in such a way as to be casually connected to the

10

conditions at the Johnson State Prison.  See Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991) ("prison's refusal to entertain his grievance" did not state civil rights violation); Dunn v. Martin, 178 Fed. Appx. 876, 878 (11th Cir. Apr. 21, 2006) (citing Flick v. Alba in support of decision finding no constitutional violation as a result of prison officials failing to respond to a grievance) (unpublished opinion).

**Exhaustion**

Plaintiff explicitly states that some prisoners have sought relief via the grievance system at the prison.  (Doc. 1 at ¶ II).  However, it appears from Plaintiff's allegations concerning counselors not assisting prisoners, that neither Plaintiff, nor any other prisoner, has gone through the state grievance procedure to address any of the allegations in the instant action.

Title 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  See also Porter v. Nussle, 534 U.S. 516, 532 (2002) ("we hold that the . . . exhaustion requirement applies to all inmate suits about prison life"); Alexander v. Hawk, 159 F.3d 1321, 1326 (11th Cir. 1998) (a federal court does not have jurisdiction to consider the

11

merits of a prisoner's suit until he has exhausted his available administrative remedies).  Georgia provides a two-tier formal prison grievance system for prisoners. (www.dcor.state.ga.us/Divisions/Corrections/InmateAffairs.html).  A Georgia inmate's first step in seeking an administrative remedy is to file a grievance with "the institution administrator for review."  Id.  If not satisfied, the inmate "has the right to appeal the administrator's resolution by bringing the matter to the attention of the Commissioner's Executive Assistant."  (Id.).

Plaintiff alleges only that unnamed prisoners pursued relief at the institutional level.  Because these prisoners did not appeal to the Commissioner's Executive Assistant, there is no showing that any prisoner, in particular Plaintiff, exhausted his available administrative remedies.

Plaintiff also alleges that many prisoners do not file grievances for fear of retaliation by the prison counselors.  The lone alleged example of retaliation, that a counselor avoided inmates and later called them "bitches," may not state a claim.  See e.g. Wildberger v. Bracknell, 869 F.2d 1467, 1468 (11th Cir. 1989) (prisoner stated a claim of retaliation when he alleged prison officials disciplined him for filing grievances); Pittsley v. Warish, 927 F.2d 3, 7 (1st Cir. 1991) ("Fear or emotional injury which results solely from verbal harassment or idle threats is

12

generally not sufficient to constitute an invasion of an identified liberty interest."); McFadden v. Lucas, 713 F.2d 143, 146 (5th Cir. 1983) ("Mere threatening language and gestures of a [state actor] do not, even if true, amount to constitutional violations."). However, even if this Court were to find a potential claim, Plaintiff has not shown he has exhausted this claim by seeking relief at the state level.

Given the nature of the allegations, which concern prison life in general and not any injury specific to Plaintiff, and the apparent failure to exhaust administrative remedies, this Court finds that Plaintiff's allegations related to conditions at the Johnson State Prison should be dismissed without prejudice.

### 4. Parole Board

Plaintiff alleges that the Board does not grant personal interviews, discourages prisoners from taking advantage of programs and good-time credits, and keeps prisoner files secret. Plaintiff is concerned that the Board's actions violate the Due Process Clause.

First, as noted above, Plaintiff has failed to allege facts indicating that he suffered any harm as a result of the Board's practices. Thus, Plaintiff has not shown that he has standing to raise these claims.

13

Additionally, the United States Court of Appeals for the Eleventh Circuit previously held that Georgia's parole system does not create a liberty interest in parole subject to the protection of the Due Process Clause. Sultenfuss v. Snow, 35 F.3d 1494, 1499 (11th Cir. 1994); accord Jones v. Ray, 279 F.3d 944, 946 (2001); see also Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442 U.S. 1, 7 (1979) ("no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence"). The Board has broad and unfettered discretion in reaching parole decisions as to each inmate based upon their individual history and circumstances. Sultenfuss, 279 F.3d at 1499-1501. The Board is not required to reach any particular result in a given case, to adhere to any uniform standard of review, or to abide by the parole guidelines in administering parole. Id.

With regard to the Board's alleged failure to hold personal interviews with inmates, the Supreme Court has previously held that when a parole system does not create a liberty interest in parole, a parole board is not required to grant a hearing to an inmate before making the parole determination. Jago v. Curen, 454 U.S. 14, 21 (1981). Thus, the Board's failure to grant personal interviews does not state a claim.

As to Plaintiff's concern that the Board keeps prisoner files secret, under Georgia law, parole files are "confidential state secrets." Porter v. Ray, 461 F.3d 1315, 1324 (11th Cir.) (citing O.C.G.A. § 42-9-53), cert. denied, __ U.S. __, 127 S. Ct. 516 (2006). Further, federal "discovery rules do not permit . . . [Plaintiff] to go on a fishing expedition." Id. Given that Plaintiff offers no facts suggesting that he has been injured by incorrect information in his parole file, there is no basis for finding that Plaintiff is entitled to have his parole file reviewed.

III.   Conclusion

In summary, there has been no showing that Plaintiff has standing to bring this action. Plaintiff has also failed to exhaust his available administrative remedies. Finally, with regard to Plaintiff's challenge to the Board's practices, he does not have a due process right for a personal interview, and he has not alleged facts which would support a finding that he is entitled to have his parole file reviewed by this Court. However, as Plaintiff attempted to bring this action as a class action, he should be given an opportunity to file a new civil action, if he believes he has been personally injured by any unconstitutional act or omission of prison officials and/or the Board. Thus, in deference to Plaintiff's pro se status, this Court will dismiss this action without prejudice.

AO 72A
(Rev.8/82)

**IT IS ORDERED** that the instant civil rights action [Doc. 1] is **DISMISSED WITHOUT PREJUDICE**. For the purpose of dismissal only, Plaintiff's request for leave to file this action in forma pauperis [Doc. 3] is **GRANTED**.

**IT IS SO ORDERED**, this 3rd day of October, 2007.

_____
JACK T. CAMP
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)